

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-2001

# McLaughlin v. Watson

Precedential or Non-Precedential:

Docket 00-2377

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"McLaughlin v. Watson" (2001). *2001 Decisions.* Paper 269.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/269

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 20, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-2377 and 01-1372

JOHN MCLAUGHLIN; CHARLES A. MICEWSKI; DENNIS J.
MCKEEFERY; EDWARD EGGLES

v.

ALEX WATSON, Assistant Secretary of State for the U.S.
State Department; DAVE LAWRENCE; LARRY LEIGHTLEY;
VICTORIA NAYLOR; MICHAEL STILES; DETECTIVE
SILVANA; DETECTIVE WOODS; ARNOLD GORDON; TOM
CORBETT; JOHN KELLY; MICHAEL B. FISHER; RICHARD
PATTON; LOU GENTILE; FIQUITO VASQUEZ; PENA-
GOMEZ; PEDRO CORPORAN

Michael Stiles,
        Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 97-cv-01555)
District Judge: Hon. A. Richard Caputo

Argued October 9, 2001

Before: SCIRICA, GREENBERG and COWEN,
Circuit Judges

(Filed: November 20, 2001)

Mary C. Fry, Esq.
Office of the United States Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

Peter R. Maier, Esq. (Argued)
United States Department of Justice
Civil Division, Appellate Staff
601 D. Street, N.W., Rm. 9106
Washington, DC 20530

Barbara L. Herwig, Esq.
United States Department of Justice
Civil Division, Appellate Staff
601 D. Street, N.W., Rm. 9110
Washington, DC 20530

 Counsel for Appellant

Donald A. Bailey, Esq. (Argued)
4311 North 6th Street
Harrisburg, PA 17110

 Counsel for Appellees McLaughlin;
Micewski; McKeefery and Eggles

Robert B. Hoffman, Esq.
Reed Smith
213 Market Street
P.O. Box 11844
Harrisburg, PA 17101

 Counsel for Appellees Kelly;
Fisher; Patton and Gentile

OPINION OF THE COURT

COWEN, Circuit Judge.

We are presented with the question of when a federal official is entitled to "qualified immunity" in a Bivens-based[1] civil action for damages. Because we conclude that the District Court erred in denying Defendant the protection of qualified immunity, we will reverse.

I.

This litigation centers around an investigation into drug trafficking activities in the Dominican Republic. Plaintiffs/Appellees are agents of the Pennsylvania Attorney General's Office who were involved in the drug investigation. In 1997, Plaintiffs filed a Bivens suit against Defendant/Appellant Michael Stiles ("Stiles"), then United States Attorney for the Eastern District of Pennsylvania. The Complaint alleged that Stiles violated Plaintiffs' first amendment rights and fifth amendment due process rights, and violated the provisions of 42 U.S.C. S 1981. Plaintiffs also filed a civil rights action against members of the Pennsylvania Attorney General's Office ("PAG" Defendants), including Pennsylvania Attorney General Michael Fisher ("Fisher"), alleging violations of 42 U.S.C.SS 1981 and 1983. The original Complaint is long, prolix, and somewhat difficult to discern. However, the various causes of action were grounded in factual assertions that Defendants intentionally impeded Plaintiffs' criminal investigation and caused adverse employment conditions for Plaintiffs because Defendants wished to protect the Dominican drug organization. This appeal only involves the allegations against Stiles.

Stiles moved to dismiss the Complaint for non-compliance with Federal Rule of Civil Procedure 8. The Magistrate judge issued a Report and Recommendation that

_____

1. Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999 (1971).

the Motion to Dismiss be granted. The District Court adopted the Magistrate's Recommendations and dismissed the case against Stiles, noting that Stiles was entitled to "absolute prosecutorial immunity." The case against the PAG Defendants was also dismissed because it failed to state viable claims and because the suit was barred by the 11th amendment to the United States Constitution.

In an unpublished opinion, a panel of this Court reversed. See McLaughlin v. Watson, No. 99-3087, (Sept. 21, 1999) ("McLaughlin I"). The Panel held that Plaintiffs were entitled to amend their Complaint to state a first amendment cause of action against the PAG defendants and an "administrative" cause of action against Stiles. Id. at 3-4. The Panel explained that while Plaintiffs' Complaint was "not a model of clarity," the Complaint suggested that Stiles used his influence as a United States Attorney to "obtain adverse personnel actions" against Plaintiffs. Id. at 3. The Panel further explained:

> As we made clear in Carter v. City of Philadelphia, [181 F.3d 339 (3d Cir. 1999)], prosecutorial immunity is restricted to prosecutorial--as distinguished from administrative--functions. Administrative decisions, including those regarding the employment or supervision of personnel outside the prosecutor's office, are not subject to absolute prosecutorial immunity. Because [U.S. Attorney] Stiles was not clearly entitled to prosecutorial immunity from all of the claims against him, the analysis for whether the Agents state a cause of action against Stiles should proceed along the same lines as for the PAG Defendants.

Id. at 4.

Pursuant to the Panel's suggestion in McLaughlin I, Plaintiffs amended their Complaint, which now included three counts.[2] In Count I, Plaintiffs alleged that Defendants

_____

2. We note that the Amended Complaint is--like the initial Complaint--less than clear as to what precise  constitutional violations are actually being alleged against Stiles. We will, however, interpret the allegations in the Amended Complaint's language giving every benefit to Plaintiffs.

4

(both PAG and Stiles) impaired Plaintiffs' "terms and conditions" of employment via adverse "administrative" personnel action. According to Count I, Plaintiffs' rights were violated because Stiles and the PAG Defendants:

> [impaired] where [Plaintiffs] could work, how much they were required to travel to the point of extreme hardship causing serious and painful medical consequences, loss of promotional opportunities, and subsequent wages, shift differentials and overtime and career damaging evaluation reports.

App. at 234. According to the Amended Complaint, these actions breached Plaintiffs' "federally guaranteed rights to be free of irrational and injuries [sic] administrative actions for the proper performance of their duties. . . ."

Count II of the Amended Complaint alleged that Defendants deprived Plaintiffs of their right to "substantive due process" by subjecting them to unfair treatment in their public employment. Count II further alleged that Defendants acted against Plaintiffs solely because of "their successful efforts to investigate [the Dominican] criminal wrongdoing." Id. at 235.

Count III of the Amended Complaint alleged that Defendants violated Plaintiffs' first amendment rights by preventing Plaintiffs from responding to negative comments about Plaintiffs contained in certain press releases. According to the Amended Complaint: "the PAG defendants are still unlawfully enforcing today [their order to Plaintiffs] not to respond to the press in any form, or answer any charges in any forums." App. at 236.

Stiles moved to dismiss the Amended Complaint based on qualified immunity or, in the alternative, for summary judgment. The summary judgment part of the motion argued that there was no issue of fact as to whether Stiles acted administratively against Plaintiffs. In a Memorandum Opinion dated July 6, 2000, the District Court denied Stiles' Motion to Dismiss with the following language:

> Defendant contends he is entitled to qualified immunity. I find it premature to determine this issue in defendant's favor. There is a first amendment claim

5

asserted against defendant. That is a clearly established constitutional right, which, if interfered with by defendant's use of influence with plaintiffs' employer, would nullify the availability of qualified immunity.

The Motion for Summary Judgment was denied because the District Court concluded that "there is a genuine issue of material fact as to whether actions taken by defendant caused adverse employment decisions to be made concerning the plaintiffs. . . ."3 Stiles now appeals again to this Court, solely on the qualified immunity issue.

II.

We have jurisdiction over the appeal under 28 U.S.C. S 1291; see Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151 (1995); Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806 (1985). We review a motion to dismiss based on the defense of qualified immunity de novo as it involves a pure question of law. Acierno v. Cloutier, 40 F.3d 597, 609 (3d Cir. 1994) (citing Burns v. County of Cambria, 971 F.2d 1015, 1020 (3d Cir. 1992)).

_____

3. The District Court based this conclusion on deposition testimony regarding a meeting that took place between Stiles and Fisher in August, 1998. The meeting apparently involved the results of an investigation being conducted by Stiles' office regarding allegations of improper conduct by Plaintiffs in their investigatory duties. At this meeting, Stiles
informed Fisher that he would not prosecute any cases investigated by Plaintiffs. Additionally, Fisher and Stiles discussed the possibility of an
"FBI/US Attorney operation" leasing space in the same Philadelphia office building (the "Essington Avenue" Office) that housed Pennsylvania's Bureau of Narcotics Investigation ("BNI"). According to Fisher's deposition, Stiles said that the United States Attorney's Office and the FBI would "continue[ ] to have problems" dealing with "BNI at Essington Avenue so long as any of the [plaintiffs] continue to be housed at Essington Avenue." Reacting to this statement by Stiles, Fisher wrote a note that read: "Personnel Problems--FBI/U.S. Atty Assignment," accompanied by the words, "need them [Plaintiffs] out of Essington." Fisher further stated in his deposition that Stiles promised to provide witnesses against Plaintiffs if they filed a grievance following their reassignment. Fisher also indicated that the Attorney General's Office would "check out" Philadelphia Police Department employees with the FBI before they moved into Essington Avenue.

6

The contours of the doctrine of "qualified immunity" are well-delineated and its underlying rationale has been clearly pronounced. As the Supreme Court explained, "permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). Courts have accommodated this concern"by generally providing government officials performing discretionary functions with a `qualified immunity,' shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Id.; see Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).

"One of the purposes of [qualified] immunity . . . is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." Siegert v. Gilley, 500 U.S. 226, 237, 111 S.Ct. 1789, 1793 (1991). Doctrinally speaking, qualified immunity "is an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985) (emphasis in original); see Siegert, 500 U.S. at 226, 111 S.Ct. at 1794. As the Supreme Court has explained, "qualified immunity" affords "protection to all but the plainly incompetent or those who knowingly violate the law." Malley, 475 U.S. at 341, 106 S.Ct. at 1096. The rule supports "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." In Re City of Philadelphia Litig., 49 F.3d 945, 960 (3d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817, 102 S.Ct. 2727, 2732 (1982) (citations omitted)).

In order to defeat an assertion of qualified immunity, a plaintiff must allege that the official violated a"clearly established" right. Anderson, 483 U.S. at 635, 107 S.Ct. at 3038. A plaintiff does not fulfill this requirement simply by alleging the defendant violated some constitutional

7

provision. Rather, "the right the official is alleged to have violated must have been `clearly established' in a more particularized, and hence more relevant, sense." Anderson, 483 U.S. at 640, 107 S.Ct. at 3039 (emphasis added). As this Court explained, "clearly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right. A plaintiff need not show that the very action in question has previously been held unlawful, but needs to show that in light of preexisting law the unlawfulness was apparent. Shea v. Smith, 966 F.2d 127, 130 (3d Cir. 1992) (citations omitted).

In determining whether an official violated a clearly established right, the Court first must ask whether a plaintiff has asserted a violation of a constitutional right at all, D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1368 (3d Cir. 1992) (citing Siegert, 111 S.Ct. at 1793), and, if so, then go on to examine whether the right was "clearly established." Id. This Court has interpreted the phrase "clearly established" to mean "some but not precise factual correspondence" between relevant precedents and the conduct at issue, and that "[a]lthough officials need not predic[t] the future course of constitutional law, they are required to relate established law to analogous factual settings." Ryan v. Burlington County, 860 F.2d 1199, 1208-09 (3d Cir. 1988), cert. denied, 490 U.S. 1020, 109 S.Ct. 1745 (1989) (quoting People of Three Mile Island v. Nuclear Regulatory Comm'rs, 747 F.2d 139, 144 (3d Cir. 1984)). The essential inquiry is whether a reasonable official in the defendant's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 797 (3d Cir. 2000) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989), cert. denied, 493 U.S. 1044, 110 S.Ct. 840 (1990)).

III.

Stiles argues that he is entitled to "qualified immunity" on all three counts in Plaintiffs' Amended Complaint. More specifically, Stiles asserts that the District Court erred by

8

not following the requisite analytical framework for assessing a "qualified immunity" claim and that--had the District Court performed the correct analysis--the Court would have had to grant the motion to dismiss. Along these lines, Stiles asserts that Plaintiffs have not alleged violations of any federal rights and, therefore, could not prove violations of any "clearly established" rights. Defendant posits that Plaintiffs have, at best, alleged violations of "garden variety" state employment law claims.

Plaintiffs' appellate Brief offers no substantive response to the "qualified immunity" arguments raised by Stiles. Rather, Plaintiffs' theory of the case, as explained in their Brief, is that "[t]his appeal is no more than a re-submission of the same issues that were before the Court previously [in McLaughlin I]." Plaintiffs' Brief at 6 ("Summary of Argument"). As such, Plaintiffs label Stiles' appeal a "poorly disguised misnamed motion to vacate and reconsider." Id. Plaintiffs' apparent contention is that this Court already conclusively decided the issue of qualified immunity against Stiles in McLaughlin I.

We reject Plaintiffs' contention that the qualified immunity issue was already decided by this Court in McLaughlin I. A careful reading of that case reveals that the panel decided only that Stiles was not necessarily entitled to absolute immunity on all claims. The Court did not address the completely distinct doctrine of qualified immunity. See id. at 3-4.

Furthermore, we agree with Defendant that the District Court erred in summarily dispensing with the qualified immunity issue in favor of Plaintiffs. As discussed above, the analytical framework that a court must use in addressing a "qualified immunity" argument is well-settled in this Circuit. The court cannot--as the District Court essentially did here--stop with a conclusory statement that Stiles' alleged use of "influence with plaintiffs' employer" violated the first amendment. Rather, the District Court must go one step further and determine whether the facts alleged by plaintiffs violated a "clearly established right." This necessarily entails an analysis of case law existing at the time of the defendant's alleged improper conduct. Without such an analysis there is no way to determine if

9

the defendant should have known that what he or she was doing was constitutionally prohibited. See In Re City of Philadelphia Litg., 49 F.3d at 961 (if the law is not established clearly when an official acts, he is entitled to qualified immunity because he "could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to `know' that the law forbade conduct not previously identified as unlawful.") (quoting Harlow, 457 U.S. at 819, 102 S.Ct. at 2738). In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited. Although the District Court seemed to be aware of the appropriate test, see App. at 6 n.1, it did not adequately apply the test to this case.

We see no need to remand the case. Even assuming as true Plaintiffs' allegations, we cannot say that Stiles--at the time he acted--violated any "clearly established" constitutional right. Notably, Plaintiffs' Brief fails to mention even one case in this Circuit or elsewhere to suggest that Stiles violated a "clearly established" right.[4] In fact, as explained above, Plaintiffs did not substantively respond at all in their Brief to Stiles' arguments regarding qualified immunity. Rather, Plaintiffs' Brief argued a different theory of the case altogether--that the qualified immunity issue had already been decided by this Court in McLaughlin I. As noted above, however, that reading of our prior opinion is incorrect.

Moreover, our own review of the law existing at the time of Stiles' alleged conduct reveals that he had no reason to think that his alleged interaction with the Pennsylvania Attorney General violated Plaintiffs' "clearly established"

_____

4. Plaintiffs fared no better in their Brief to the District Court in response to Defendant's Motion to Dismiss or in the alternative for Summary Judgment. In the Motion to Dismiss, Stiles clearly asserted a "qualified immunity" defense. App. at 258. In responding to that Motion, Plaintiffs cited no case law--in existence at the time of Stiles' alleged conduct--to suggest violation of a "clearly established" right. See App. at 362-363. The District Court--although it refused to grant Stiles qualified immunity--also did not analyze the factual allegations against case law precedent.

10

constitutional rights. In Count I of the Amended Complaint, Plaintiffs allege that Stiles acted administratively to influence the Pennsylvania Attorney General to take adverse employment-related action against them. Although the Amended Complaint does not identify the specific source of any right Stiles may have violated, the District Court apparently construed Count I as a first amendment based retaliation claim. Nevertheless, even if we assume that Count I alleges a constitutional right, it does not demonstrate violation of one that is "clearly established."

When a public official is sued for allegedly causing a third party to take some type of adverse action against plaintiff's speech, we have held that defendant's conduct must be of a particularly virulent character. It is not enough that defendant speaks critically of plaintiff or even that defendant directly urges or influences the third party to take adverse action. Rather, defendant must "threaten" or "coerce" the third party to act. Along these lines Stiles' Brief aptly directs us to our sister circuit's opinion in Suarez Corp. Indus. v. McGraw, 202 F.3d 676 (4th Cir. 2000):

> The nature of the [defendant's] retaliatory acts has particular significance where the public official's acts are in the form of speech. Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated. Thus, where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow, such speech does not adversely affect a citizen's First Amendment rights even if defamatory.

Id. at 687.

At the time Stiles committed the alleged violations, the Third Circuit had already held that strongly urging or influencing, but not "coercing" a third party to take adverse action affecting a plaintiff's speech did not violate plaintiff's constitutional rights. R.C. Maxwell Co. v. Borough of New Hope, 735 F.2d 85 (3d Cir. 1984). In R.C. Maxwell, Plaintiff Maxwell leased space from Citibank in the Borough of New

11

Hope for the right to maintain commercial billboards. The Borough Council felt that the billboards negatively affected the town's "ambience" and wrote a strong letter to Citibank, urging it to have the billboards removed when plaintiff's lease expired. In that letter, the Borough expressly stated that it would be seeking legal remedies--such as drafting a zoning ordinance or dragging Citibank into litigation--if the billboards were not removed. Id. at 86-87. Citibank complied with the Borough's request, noting that its desire to stay in the Borough Council's "good graces" was a motivating factor in deciding not to allow Maxwell to maintain the billboards after expiration of the lease. Id. at 87.

Maxwell refused to remove the billboards and brought an action against the Borough for, among other causes of action, violation of its first amendment rights. In addition to damages, Maxwell sought a declaration that the Borough acted unlawfully in "coercing" Citibank to take action against it. Id. The District Court granted summary judgment in favor of the Borough and ordered it to remove the billboards within 15 days. Id. This Court affirmed. In addressing the first amendment claim, we explained that the Borough's actions did not amount to the type of serious "coercion" that would trigger a constitutional violation. Id. at 88-89. Moreover, the fact that Citibank acted in part because it wished to have a "receptive climate" within the Borough for future development projects did not alter our conclusion. Id. at 89.

While not taking place specifically in the employment context, we believe that our Opinion in R.C. Maxwell--written well before Stiles' alleged interaction with the Pennsylvania Attorney General--provides relevant legal principles to guide us in this case. Stiles had no reason to believe that requesting or influencing another's employer to take adverse personnel action violated first amendment rights. We note in this regard that the alleged improper conduct itself took the form of speech--conversations with Fisher where Stiles allegedly influenced Fisher to take adverse action against Plaintiffs. Cf. X-Men Security, Inc. v. Pataki, 196 F.3d 56, 68-70 (2d Cir. 1999) (noting that public official's own right to free speech must also be

considered and that such rights are not necessarily subordinate to plaintiffs' free speech rights); Smith v. School District of Philadelphia, 112 F. Supp.2d 417, 431 (E.D. Pa. 2000) (school district's urging Home and School Association to remove plaintiff from his position as president of that association was itself a "protected right to free speech"); Northeast Women's Center, Inc. v. McMonagle, 670 F. Supp. 1300, 1308 (E.D. Pa. 1987) ("[a]ttempts to persuade another to action are clearly within the scope of the First Amendment").5

IV.

For the foregoing reasons we will reverse the order of the District Court entered on July 7, 2000, and remand with instructions to dismiss all claims against Stiles.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

5. Apparently, the District Court did not address the qualified immunity issue as it related to Counts II and III in the Amended Complaint. Like Count I, however, these claims cannot survive a qualified immunity defense. Count II is apparently based on The "Privileges and Immunities Clause" of the 14th Amendment. See Saenz v. Roe, 526 U.S. 489, 119 S.Ct. 1518 (1999). Plaintiffs have not set forth facts that demonstrate a claim under this provision and certainly have not alleged violation of a "clearly established" right under this provision of the Constitution. To the extent that Count II alleges a substantive due process violation, we note that this Court already decided in McLaughlin I that Plaintiffs have no due process rights in their employment and we need not revisit that issue here. Count III alleges that Stiles violated Plaintiffs' first amendment rights because he "knew" that Plaintiffs' reputations were being attacked in the Press. Count III only implies, however, that it was the PAG Defendants––not Stiles––that ordered Plaintiffs' to remain silent in the face of these negative comments. As such, Count III does not allege a constitutional claim against Stiles, much less one that is "clearly established."

13