**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

Nos. 24-2033 & 24-2120

———————————

MARIANNE SAWICKI,
              Appellant in No. 24-2033

v.

MICHAEL M. KIPPHAN; LORI HEATON; HUNTINGDON-BEDFORD-FULTON
AREA AGENCY ON AGING; CHRISTOPHER B. WENCKER; DAVID G. SMITH;
COUNTY OF HUNTINGDON, PENNSYLVANIA; GEORGE N. ZANIC; ANGELA
ROBINSON; RICHARD A. WILSON; BOROUGH OF HUNTINGDON,
PENNSYLVANIA

Richard A. Wilson, Borough of Huntingdon,
              Appellants in No. 24-2120

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:21-cv-02031)
District Judge: Hon. Jennifer P. Wilson

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
on April 29, 2025

Before: KRAUSE, BIBAS, and MONTGOMERY-REEVES, *Circuit Judges*

(Filed: May 1, 2025)

———————————

## OPINION*

———————————

BIBAS, *Circuit Judge*.

Marianne Sawicki sued nearly a dozen officials and municipalities for allegedly violating her constitutional rights. The District Court dismissed her second amended complaint and the defendants' motion for attorney's fees. We will affirm.

This saga begins with cats. Barbara Kissinger ran a nonprofit cat shelter. In 2019, police stopped her van, detained it, and recovered many cats. According to the complaint, "police locked the van and let it sit on the street with the animals inside for about 36 hours," causing many of the cats to die. Dist. Ct. Dkt. 85, 2nd Am. Compl., at 17–18 (¶42). Yet Kissinger was charged with animal abuse, and solo civil-rights lawyer Marianne Sawicki represented her in that case. She also represented Kissinger in another case: One of the municipalities, Huntingdon Borough, demolished Kissinger's house and filed a civil lien against her to recover the costs.

Next, we come to allegations of revenge. Sawicki alleges that a judge with a longstanding grudge against her removed her from representing Kissinger in the criminal case. She also claims that the Borough had not given Kissinger the notice required by statute, exposing the Borough to massive liability. To protect the Borough, officials allegedly conspired to stop her by crushing her legal practice and by forcing her to defend her law license. The

———————————

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

2

judge and others reported her to the bar disciplinary board, where they testified that she was erratic and behaved disruptively in ways symptomatic of "severe mental illness." Dist. Ct. Dkt. 85, Second Am. Compl., at 63 (¶187). Sawicki says this bar proceeding cost her not only time and money, but also a "marked deterioration of physical and mental health" that forced her to retire her law license and drastically scale back her remaining pro bono practice. *Id.*, at 85 (¶273).

The board found ten ethical violations and recommended suspending her law license for a year and a day. The Pennsylvania Supreme Court did so. *Off. of Disciplinary Couns. v. Sawicki*, No. 3005 Disciplinary Docket No. 3, 2023 Pa. LEXIS 1726 (Dec. 22, 2023) (per curiam).

Meanwhile, Sawicki sued the Borough, the county, the Borough's lawyer, and various judicial officials in federal court. In her second amended complaint, she alleged First Amendment retaliation against her for her protected advocacy for Kissinger and violations of due process in depriving her of her law practice and its funds. The District Court dismissed that complaint for failure to state a claim and denied leave to amend a third time. Sawicki appeals. We review de novo. *Doe v. Hesketh*, 828 F.3d 159, 166–67 (3d Cir. 2016).

First, Sawicki argues that the District Court lacked jurisdiction because her claims were not yet ripe; she was not suspended until after it dismissed her case. But she concedes that her formal suspension from practicing law is not her alleged injury. Rather, "[t]he injury identified in the pleading was … the gradual strangulation of [her] law practice" and "extinguish[ing] her constitutionally protected activity of speaking out in advocacy for civil rights." Appellant's Br. at 33. Her complaint devoted sixteen paragraphs to these and other

3

injuries that she had *already* sustained because of the pending disciplinary proceedings. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (listing both monetary harms and constitutional-rights violations as Article III injuries). Those allegations were enough to show that her claims had ripened. Her injuries were not "dependent on contingent future events that may not occur as anticipated," like the state's suspending her law license. *Trump v. New York*, 592 U.S. 125, 131 (2020) (internal quotation marks omitted). They had already happened.

Turning to the merits, Sawicki fails to state a First Amendment retaliation claim. Her allegations boil down to saying that the defendants triggered a state bar investigation to prevent her from litigating civil-rights cases. But "[w]hen a public official is sued for allegedly causing a third party to take some type of adverse action against a plaintiff's speech, we have held that defendant's conduct must be of a particularly virulent character." *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001). Criticizing the plaintiff or even urging adverse action is not enough; "[r]ather, defendant must 'threaten' or 'coerce' the third party to act." *Id.* "[I]n the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will follow, such speech does not adversely affect a citizen's First Amendment rights even if defamatory." *Id.* (internal quotation marks omitted). Sawicki does not clear this hurdle: She never alleges that anyone threatened or coerced the board. Plus, her conclusory conspiracy allegations are implausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Sawicki also challenges the dismissal of her due-process claims. As she concedes, she cannot use a federal district court to appeal a state Supreme Court's disciplinary

adjudication. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983). Instead, she says the officials subverted the disciplinary process by filing false reports and lying to investigators. But that assertion is just her retaliation theory repackaged. So it too crashes into *McLaughlin*'s bar.

And the District Court properly denied Sawicki leave to amend yet again. Amendment would be futile because her theories are baseless, and her proposed third amended complaint did nothing to cure these deficiencies.

Cross-appealing, the Borough and its lawyer say the District Court should have held a hearing on whether Sawicki litigated in bad faith and should have awarded attorney's fees. But as they admit, awarding attorney's fees to a prevailing party in a civil-rights case is discretionary. 42 U.S.C. §1988(b). We review for abuse of discretion. *Raab v. City of Ocean City*, 833 F.3d 286, 292 (3d Cir. 2016). On these facts, the District Court could have found the lawsuit frivolous and awarded attorney's fees. But given Sawicki's mental impairments, the District Court did not abuse its discretion in choosing not to do so. We will thus affirm both the dismissal with prejudice and the denial of attorney's fees.