

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-2005

# Ali v. NJ State Pol

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1315

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ali v. NJ State Pol" (2005). *2005 Decisions.* Paper 1577.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1577

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 04-1315

SHAUKAT ALI, Appellant

v.

NEW JERSEY STATE POLICE DEPARTMENT;
NICHOLAS J. ZICHELLO; EDWARD LYONS;
DAVID KOLSAR; RUTH OWEN, Montague;
MUNICIPAL COURT SUSSEX PROSECUTOR OFFICE;
JOHN AND JANE DOE, Persons Who's Identity
is Unknown; TOWNSHIP OF MONTAGUE; M. MCMURRY,
Trooper; K. MARRON, Trooper K. Marron;
DOUGHLAS PORTER, Lieutenant Doughlas Porter;
CARL A. WILLIAMS, JR., of New Jersey State Police

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 00-CV-5927)
District Judge: The Honorable Alfred M. Wolin

_____

Submitted Under Third Circuit LAR 34.1(a)

December 17, 2004

(Filed: January 6, 2005)

Before: NYGAARD and GARTH, Circuit Judges.
and POLLAK,[*] District Judge.

_____

[*]Honorable Louis H. Pollak, Senior District Judge for the United States District
Court of the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT

_____

POLLAK, District Judge:

Shaukat Ali ("Ali") challenges the District Court's summary denial of his claims for false arrest against the New Jersey State Police and certain individual officers. The District Court dismissed Ali's claims arising out of his arrest on December 6, 1998, under Fed. R. Civ. P. 12(b)(6), and granted summary judgment to the defendants on claims arising out of his arrest on December 20, 1998, both on the grounds that the defendant police officers were entitled to qualified immunity. Ali also contends that the District Court erred by denying his own cross-motion for summary judgment against the officers, and by refusing to allow Ali to depose one of the officers, Trooper Marron, before granting summary judgment against Ali. However, Ali's arguments are unpersuasive.

## I.

This court's review of a dismissal under Fed. R. Civ. P. 12(b)(6) is plenary, as is the court's review of a grant of summary judgment under Fed. R. Civ. P. 56 based on qualified immunity. *D.R. by L.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1367 (3d Cir. 1992) (motion to dismiss); *Abbott v. Latshaw*, 164 F.3d 141, 145 (3d Cir. 1998) (summary judgment).

## II.

2

Ali's claims arose out of two arrests based on alleged violent threats by Ali against his wife and children on December 6, 1998. Ali admits that there was a domestic dispute that evening, although he claims that it was his wife, not he, who was violent, made threats, and broke various household items. He claims that he was the one who first called 911 to report the incident, but admitted in his statement of undisputed facts under Fed. R. Civ. P. 56.1 that his wife interrupted the call, grabbed the telephone, and began speaking to the 911 operator. He admits that, after the call, his wife left the house to go to a neighbor's house.

Ali, who is Muslim and of Pakistani origin, claims that the officers responding to the 911 call, New Jersey State Troopers McCurry and Kolesar, on arrival at the house immediately began cursing at him, using ethnic slurs, and calling him a terrorist, as well as "a wife abuser and a child abuser." The officers claim that, before they met Ali, they had spoken to his wife at a neighbor's house, and she had reported threats of violence by her husband. Ali's allegations are silent on this point, and he has not contradicted the officers' account. Indeed, his report that his wife left the house is consistent with the officers' claims that they talked to her before they arrived at the house, as is his allegation that when the officers arrived, they called him "a wife abuser and a child abuser." Also, Mrs. Ali's statement in support of her request for a temporary restraining order (TRO) later that day indicates that her husband had a long history of abusing her both physically and verbally, and that he had specifically threatened to kill her. Regardless of the

3

statement's truth, it does show that Mrs. Ali claimed her husband acted abusively.

Ali was arrested for the alleged threats, and, that same day, a judge of the Montague Township Municipal Court issued a TRO prohibiting him from, among other things, seeing his children or visiting the family home. On December 17, 1998, the TRO was amended to allow Ali limited visitation rights. That evening, based on this amendment, Ali went to the family home and parked in the street outside, waiting for his children. The children never emerged, and Ali left. However, his daughter Anila called 911 and reported that her father was at the house. Although she later amended her statement, Anila initially reported to the police that her father had been in the driveway of the house, not on the street out front, thus violating the TRO. Based on this mistaken statement, a warrant was issued for Ali's arrest, and he was charged with violating the TRO. He was again arrested on December 20, 1998, this time by Trooper Marron.

The charges against Ali for violating the TRO were dismissed in September 1999, and the TRO was dissolved in November 1999. All charges against Ali were dropped in April 2000.

### III.

The District Court found that Ali's claims were barred by the officers' qualified immunity. Qualified immunity protects the officers from Ali's claims if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The

4

first step in applying this standard is to determine whether Ali's allegations, if they are true, establish a constitutional violation. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The District Court here determined that they did. Thus, this court need consider only the second part of the qualified immunity test: whether the officers' conduct violated a "clearly established" right. *Saucier*, 533 U.S. at 201. If it did not, the officers are entitled to qualified immunity

Although it is certainly clear that arresting someone without probable cause is constitutionally impermissible, the court's inquiry here is not whether the officers in fact had probable cause for arresting Ali. Rather, the court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id.* at 202 (emphasis added). The court must examine the particular circumstances of a case to determine whether the conduct complained of can be considered objectively reasonable "based upon the information the officers had when the conduct occurred." *Id*. at 207. Police officers "can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause," and will not be held responsible in court for every act later found to be a constitutional mistake. *Id.* at 206.

Although Ali offers an account of the underlying events differing from that of the police, the record indicates that the police could reasonably have believed when they arrested Ali that he had, in the incident of December 6, 1998, threatened his wife with violence, and, in the incident of December 17, 1998, violated the terms of the temporary

restraining order that was issued after the initial arrest.

It is undisputed that the police were dispatched to Ali's home to respond to a domestic violence call. Ali claims that they called him a "wife abuser," which indicates that they believed he had at least threatened violence to his wife. This is consistent with the officers' statements that they were told by Mrs. Ali, whom they met at a neighbor's house, that Ali had threatened to kill her. None of Ali's allegations contradicts these key facts.[1] Also, although Ali alleges improper and discriminatory conduct by the officers, the officers' subjective intent is not relevant to the court's inquiry. Even if the officers arrested Ali for improper motives, "a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Such evidence is "simply irrelevant" to a qualified immunity defense. *Id.* Ali has not shown that the officers should have known that their conduct was unlawful, and they are entitled to qualified immunity.

Similarly, the arrest on December 20, 1998, depended on Ali's young daughter's report that her father had come to the family's house and parked briefly in the driveway, which a TRO forbade him to do. Ali does not dispute that his daughter called the police

---

[1]Ali's claims that his wife became violent and destructive, and threatened him, clearly conflict with his wife's version of events. However, this conflict is not before the court, as the officers could reasonably have believed Mrs. Ali's account, even if the account were to turn out to be false.

and made this report. Even if the daughter was mistaken, and later corrected her statement, there is no way that the officers could have known that they were violating a clearly established right when they arrested Ali based on the daughter's mistaken statement. The officers are entitled to qualified immunity for their related actions.

IV.

This court is sympathetic to Ali's claims that the defendants were verbally abusive and made discriminatory remarks as they arrested him. However, the alleged police misbehavior cannot support Ali's claim for false arrest. The defendant officers violated no clearly-established right by arresting Ali on December 6 and December 20, 1998, given the factual claims known to them at the times of the two arrests. The District Court was therefore correct in finding that the officers were entitled to qualified immunity, and its judgment will be affirmed.[2]

---

[2]Given this resolution of these issues, the court need not address Ali's claims that the District Court erred by denying his cross-motion for summary judgment, or by refusing to allow Ali to take Trooper Marron's deposition before considering defendants' summary judgment motion.