**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 19-2495 & 19-2496

———————

ANGELA HYMAN,
                    Appellant in 19-2496

v.

CAPITAL ONE AUTO FINANCE;
COMMONWEALTH RECOVERY GROUP, INC.;
MICHAEL MORRIS, PENNSYLVANIA STATE POLICE;
COL. TYREE C. BLOCKER; BRYAN DEVLIN;
JOHN DOE TROOPERS 1-10

Bryan Devlin,
                    Appellant in 19-2495

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-17-cv-00089)
District Judge: Hon. Kim R. Gibson

———————

Argued September 9, 2020

Before: CHAGARES, HARDIMAN, and MATEY, *Circuit Judges*.

(Opinion filed: October 1, 2020)

Gregory G. Schwab
Nolan B. Meeks      [ARGUED]
Alyssa L. Kuhl
Daniel C. Beck

Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA 17110
         *Counsel for Appellant/Cross-Appellee Bryan Devlin*

Jennifer D. Bennett  [ARGUED]
Gupta Wessler PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111

Alexandra Brodsky
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036

Cary L. Flitter
Andrew M. Milz
Jody T. Lopez-Jacobs
Flitter Milz P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
         *Counsel for Appellee/Cross-Appellant Angela Hyman*

---

OPINION[*]

---

MATEY, *Circuit Judge*.

After a jury found Bryan Devlin violated Angela Hyman's constitutional rights when he aided in the repossession of her car, Devlin moved for judgment as a matter of law based on qualified immunity and for constitutionally required reduction of the jury's $500,000 punitive damages award. The District Court denied his motion for qualified immunity but granted his motion for reduction of damages, reducing the punitive damages

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

to $30,000. Devlin appeals the qualified immunity decision, and Hyman appeals the reduction of damages. Finding no error in either decision, we will affirm.

## I. BACKGROUND

Angela Hyman defaulted on her car loan from Capital One Auto Finance so Capital One hired Jeff Brunner of Commonwealth Recovery Group to repossess the car. On October 5, 2016, Brunner arrived—without a court order—at Hyman's residence. Hyman's wife, Shyree Johnson, ran outside and asked to remove their belongings from the car. Brunner agreed. But then Johnson locked herself in the vehicle, preventing the repossession. Hyman called her daughter, a law student, for advice, and both parties called the Pennsylvania State Police. Several officers, including Corporal Bryan Devlin, responded.

A standoff followed, until Devlin told Johnson that Brunner needed to repossess the car that night and directed her to exit the vehicle. He warned that if she did not, he would break the window, remove her, and arrest her for disorderly conduct. In response, Hyman's daughter told Devlin that he could not intervene in a civil matter and was breaking the law. Devlin calmly responded, "OK, you can file a complaint on me later." (Hyman Video 00:54–59.) Johnson eventually complied with Devlin's command and Brunner towed the car.

As a result of the encounter, Hyman filed a complaint against Devlin under 42 U.S.C. § 1983, alleging that, by aiding in a private repossession, he violated her constitutional rights. Following trial, a jury returned a verdict in Hyman's favor, awarding her $5,000 in compensatory damages and $500,000 in punitive damages. Devlin then

3

moved for judgment as a matter of law, claiming he was entitled to qualified immunity, and sought constitutionally required reduction of the punitive damages award. The District Court denied his qualified immunity defense but reduced punitive damages to $30,000. These timely appeals followed.[1]

## II. DISCUSSION

### A. Devlin Is Not Entitled to Qualified Immunity

Qualified immunity protects "state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).[2] A right is "clearly established" when "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotations and citations omitted). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001).

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and we have jurisdiction under 28 U.S.C. § 1291. We review a decision on a motion for judgment as a matter of law de novo, but "view[] the evidence in the light most favorable to . . . the prevailing party." *McKenna v. City of Philadelphia*, 649 F.3d 171, 176 (3d Cir. 2011). We review an order for constitutional reduction of damages de novo. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 716–17 (3d Cir. 2010).

[2] Only the second prong of this analysis is disputed.

4

Factually similar precedent exists here, and Devlin violated clearly established law. In *Abbott v. Latshaw*, we held that "[t]he mere presence of police at the scene of a private repossession" was not unlawful, 164 F.3d 141, 147 (3d Cir. 1998), but emphasized that the officer must be a neutral "protector of the peace" and not an "enforcer." *Id.* at 149. More recently, we clarified "[t]he test is whether the officer maintains neutrality or takes an active role in the repossession resulting in an unconstitutional deprivation." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609–10 (3d Cir. 2011). The officer cannot "affirmatively aid[] a repossession such that he can be said to have caused the constitutional deprivation." *Id.* at 610. Affirmative aid includes any "facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession." *Id.*

Devlin affirmatively aided the repossession when he forced Johnson out of the car. When he arrived Brunner "couldn't do anything." (App. at 572.) Then, Devlin threatened to break the window, pull Johnson out, and place her under arrest. Only then was Brunner able to tow the car. Those actions fall within the guidance of *Harvey* and *Abbott*, and the rule that an officer may not aid in a private repossession was clearly established when Devlin arrived at Hyman's home. *See James v. N.J. State Police*, 957 F.3d 165, 169–70 (3d Cir. 2020) (explaining that a plaintiff can show a right is clearly established by "identify[ing] a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [constitutional provision at issue]" (alterations in original) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)).

Devlin argues that this situation differs because he directed his actions at a third party. But the prohibition on "affirmative intervention and aid" in *Abbott* and *Harvey* is not

5

narrowly tailored to specific parties. *Abbott*, 164 F.3d at 147; *see also Harvey*, 635 F.3d at 610 (noting "facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession" all constitute affirmative aid and are prohibited). For that reason, Devlin is not entitled to qualified immunity.

B.      **Reduction of Punitive Damages Was Constitutionally Required**

While punitive damage awards are generally permissible to deter unlawful conduct, the Supreme Court has concluded these awards can violate the Constitution's promise of due process if they are "grossly excessive." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). Three guideposts are relevant: 1) the degree of reprehensibility of the defendant's misconduct; 2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive award; and 3) how the punitive award compares to similar cases. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Examining each shows the District Court did not err in finding the award of $500,000 was unconstitutionally excessive.

We start with reprehensibility, considering whether: 1) "the harm caused was physical as opposed to economic; [2)] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3)] the target of the conduct had financial vulnerability; [4)] the conduct involved repeated actions or was an isolated incident; and [5)] the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* at 419.

Hyman's harm was mainly economic, with some physical repercussions. On the other hand, Devlin's conduct evinced some indifference to or a reckless disregard of the

6

safety of others when he threatened to shatter a glass car window and pull Johnson out. And while the record does not show a pattern of repeated conduct, Devlin testified he would "absolutely not" behave differently in the future. (App. at 431.) Finally, Devlin's admission that he knew his actions were illegal could constitute intentional malice, as we have held "'[m]alice' and 'reckless indifference,' in [the federal civil rights action] context . . . refer . . . to the [defendant's] knowledge that [he] may be acting in violation of federal law." *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000). On balance, Devlin's conduct displayed some reprehensibility, but it was not "sufficiently egregious" to support the jury's punitive damages award. *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 191–92 (3d Cir. 2007) (reducing a punitive damages award based on three of the five reprehensibility subfactors).

Turning to disparity, we look at the actual and potential "harm to the *plaintiff*." *State Farm*, 538 U.S. at 425 (emphasis added). Hyman's actual harm flowed from the seizure of her car and the resulting hardship and distress. Compensatory damages, which the jury valued at $5,000, redress this harm. *See Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001) ("[C]ompensatory damages . . . are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct."). But Johnson suffered all the threatened potential harm that Hyman argues should raise the denominator, including the unnecessary force and false arrest. Those acts are outside the inquiry under *State Farm*.

Finally, neither party points to any factually similar cases. Hyman argues that the possibility of a criminal penalty for Devlin's actions should weigh against reducing

7

damages. But "[w]hen used to determine the dollar amount of the award, . . . the criminal penalty has less utility" and "the remote possibility of a criminal sanction does not automatically sustain a punitive damages award." *State Farm*, 538 U.S. at 428; *see also id.* (noting "[g]reat care must be taken to avoid use of the civil process to assess criminal penalties that can be imposed only after the heightened protections of a criminal trial have been observed, including, of course, its higher standards of proof").

Taken together, the District Court did not err in finding Devlin's behavior was not reprehensible enough to sustain a 100:1 ratio of punitive damages to actual and potential harm to the plaintiff. *CGB Occupational Therapy*, 499 F.3d at 193. And while review of a punitive damages award requires "a measure of deference" to the jury's determination, *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 231 (3d Cir. 2005), the District Court was required to "decrease the award to an amount the evidence will bear, which amount must necessarily be as high—and may well be higher—than the level the court would have deemed appropriate if working on a clean slate." *CGB Occupational Therapy*, 499 F.3d at 193 (quoting *Willow Inn*, 399 F.3d at 231). We will affirm the District Court's order reducing the punitive damages.

### III. CONCLUSION

For these reasons, we will affirm the District Court's decision denying Devlin's motion for judgment as a matter of law and reducing the punitive damage award.