**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2652
_____

KEN SWENSON, I; CINDY CARD; LADONNA CARD,
                                                    Appellants

v.

JUDGE CLYDE VEDDER, In Official Capacity, Court of Common Pleas of York
County; ERIK D. SPURLIN, Attorney, MPL Law Firm, and in individual capacity;
JULIE STOIL FERNANDEZ, Attorney, Finkel & Fernandez, LLP, and in individual
capacity Finkel & Fernandez, LLP; RAYMOND CARD, Disowned son and Illegal co-
guardian; KERMIT CARD, Disowner son and Illegal co-guardian; BRANDY G. HOKE,
Attorney, Ream, Carr, Markey, Woloshin & Hunter LLP, and in individual capacity;
FINKEL & FERNANDEZ, LLP

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:22-cv-00635)
District Judge:  Honorable Jennifer P. Wilson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 12, 2025
Before:  HARDIMAN, MATEY, and CHUNG, <u>Circuit Judges</u>

(Opinion filed:  May 14, 2025)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**PER CURIAM**

As we write primarily for the parties, who are familiar with the background of this case, we will focus on the facts most relevant to the analysis.[1] Essentially, in 2011, as a result of a petition originally filed by three of her four adult children, Ella Card, over her strong objection, was adjudicated an incapacitated person, and The Vera Institute of Justice, Inc., became her property guardian.[2] Three times over the years (including once with her two daughters and her son-in-law), she sought to remove the guardianship proceeding to federal court; thrice, the matter was remanded to state court.

In July 2020, at an <u>ex parte</u> hearing, Ella Card's two sons, Raymond and Kermit, became co-guardians of her estate.[3] In early February 2022, with Erik Spurlin as their counsel, they filed a petition in York County Orphans' Court for enforcement of the order appointing them co-guardians, including assistance in meeting their obligation to visit their mother four times per year (they had not seen her since the 2011 proceeding). At a hearing on the petition on March 21, 2022, before Judge Clyde Vedder, they learned that Ella Card had died on February 16, 2022. That same day, Judge Vedder issued an order

---

[1] We take notice of previous judicial proceedings and otherwise draw information from the complaint, the allegations of which we presume are true because of the posture of this appeal.

[2] No personal guardian was appointed because Ella Card moved to Belize, where she had been born and owned property, shortly after the hearing on the petition. She later returned to the United States and lived in Pennsylvania.

[3] We will refer to Ella Card's sons (two of the appellees), daughters (two of the appellants), and son-in-law (the third appellant) by their first names for convenience.

requiring Ella Card's daughter, Cindy, and Ken, the husband of Ella Card's other daughter, LaDonna, to file an accounting of Ella Card's assets and estate.

Cindy, LaDonna, and Ken then filed a lengthy complaint in District Court, suing Kermit; Raymond; Spurlin; Judge Vedder; Julie Stoil Fernandez, a lawyer who represented Kermit and Raymond at the July 2020 hearing; her firm, Finkel & Fernandez, LLP; and Brandy Hoke, an attorney who appeared at the March 2022 hearing on behalf of Ella Card. They cited 42 U.S.C. §§ 1983, 1985, and 1986, 18 U.S.C. § 242, and claimed constitutional violations, fraud on the York County Orphans' Court under Federal Rule of Civil Procedure 60(b)(3), and violations of state law (including a claim of elder abuse for the death of Ella Card). They sought various forms of relief, requesting, inter alia, damages and an order voiding state court rulings.

Kermit, Raymond, Fernandez, and Finkel & Fernandez, LLP, jointly filed a motion to dismiss the complaint under the Rooker-Feldman doctrine.[4] Also, Judge Vedder, Hoke, and Spurlin each filed a motion to dismiss. Spurlin also solely relied on the Rooker-Feldman doctrine as a basis for dismissal, while the other two defendants each raised additional grounds. The District Court granted Judge Vedder's and Hoke's motions and dismissed the complaint as to them but denied the motions filed by the other defendants. Kermit, Raymond, Fernandez, Finkel & Fernandez, and Spurlin (also "the

---

[4] Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983); see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (explaining that the Rooker-Feldman doctrine bars review of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

3

remaining defendants") later filed a joint motion for judgment on the pleading. Meanwhile, Cindy, LaDonna, and Ken filed several motions, seeking, inter alia, a temporary restraining order and a preliminary injunction. The District Court granted the remaining defendants' motion, dismissing all federal claims with prejudice and declining to exercise supplemental jurisdiction over any state law claims. The District Court also dismissed the other pending motions as moot. Cindy, LaDonna, and Ken filed a timely notice of appeal.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's rulings on the motions to dismiss and the motion for judgment on the pleadings.[5] See St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp., 967 F.3d 295, 299 (3d Cir. 2020); Leamer v. Fauver, 288 F.3d 532, 535 (3d Cir. 2002).

Upon review, we will affirm the District Court's judgment. As a preliminary matter, to the extent that Cindy, LaDonna, and Ken asked the District Court to void (or otherwise sought to appeal) a state court judgment in the District Court, the District Court lacked jurisdiction under the Rooker-Feldman doctrine.[6] See Great W. Mining & Min.

---

[5] We do not review any issues that Cindy, LaDonna, and Ken do not raise. See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020) (holding that the appellant forfeited claims by failing to raise them in the opening brief). Also, we will not review the denial of their motions for a temporary restraining order and preliminary injunction because this appeal is moot to the extent that they challenge that decision. See Hankins v. Temple Univ., 829 F.2d 437, 438 n.1 (3d Cir. 1987).

[6] Also, to the extent that Cindy, LaDonna, and Ken asked the District Court to order Judge Vedder to recuse from state-court proceedings, the District Court was without authority to issue such an order. See In re Wolenski, 324 F.2d 309, 309 (3d Cir. 1963) (per curiam) (explaining that a district court lacked jurisdiction "to issue a writ of mandamus compelling action by a state official"); Knox v. Bland, 632 F.3d 1290, 1292

4

Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (describing the requirements for applying the Rooker-Feldman doctrine).

Furthermore, as the District Court determined, the claims against Judge Vedder could not proceed. In his official capacity, Judge Vedder is entitled to immunity under the Eleventh Amendment. See Benn v. First Jud. Dist. of Pa., 426 F.3d 233, 240-41 (3d Cir. 2005). And, in his personal capacity, Judge Vedder is protected by judicial immunity for the judicial acts that Cindy, LaDonna, and Ken described. See Stump v. Sparkman, 435 U.S. 349, 355-57 (1978) (explaining that judges are not civilly liable for judicial acts); Azubuko v. Royal, 443 F.3d 302, 304 (3d Cir. 2006) (per curiam) (holding that "because [a plaintiff] has not alleged that a declaratory decree was violated or that declaratory relief is unavailable, and because the injunctive relief sought by [the plaintiff] does not address the actions of [the judge] other than in his judicial capacity, [the plaintiff's] claim for injunctive relief is barred").

As for the remaining defendants, Cindy, LaDonna, and Ken could not impose § 1983 liability against persons who are not "state actors."[7] See Leshko v. Servis, 423 F.3d

---

(10th Cir. 2011) (reasoning that "[w]e have no authority to issue . . . a writ to direct state courts or their judicial officers in the performance of their duties" (citation and internal quotation marks omitted)). And the District Court could not provide relief under a federal rule of civil procedure for what did or did not happen in state court proceedings. Additionally, to the extent that Cindy, LaDonna, and Ken sought to proceed under 18 U.S.C. § 242 and now seek relief under that statute and/or 18 U.S.C. § 241, those criminal statutes are inapplicable to their civil suit. Cf. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) (stating that a private citizen has no "judicially cognizable interest in the prosecution . . . of another").

[7] Cindy, LaDonna, and Ken maintain that Kermit and Raymond were state actors as co-guardians of their mother's estate, citing cases about guardians in support of their

337, 339 (3d Cir. 2005) ("[T]o state a claim of liability under § 1983, [the plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor."). Anyone can act "under color of state law" for purposes of § 1983 by participating in a joint conspiracy with a state actor, see Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998), and Judge Vedder is a state actor. But the District Court correctly determined that the allegations of a conspiracy between Judge Vedder (or any other court official) and the other defendants did not rise above the level of bare assertions, which are insufficient to state such a claim. See Great W. Mining & Min. Co. 615 F.3d at 178; see also Dennis v. Sparks, 449 U.S. 24, 28 (1980) ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co–conspirator or a joint actor with the judge."); Abbott, 164 F.3d at 148 (describing as insufficient a complaint that "contains conclusory allegations of concerted action but is devoid of facts actually reflecting joint action").

The absence of plausible allegations about a conspiracy also precluded success on the § 1985 claim. See D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972

---

argument. But the cases they cite do not counsel a different outcome. For instance, In re Guardianship of L.W., 482 N.W.2d 60 (Wis. 1992), relates to the role of guardians in a different context and does not bear on the interpretation of "state actor" for the purposes of § 1983. And the facts are distinguishable in the § 1983 case of Thomas S. v. Morrow, 781 F.2d 367 (4th Cir. 1986). It is true that a guardian in that case was considered a "state actor." But, unlike in this case, that guardian acted in concert with, or obtained significant aid from, state officials in taking the challenged actions. Id. at 377-78. Similarly, actions taken by the attorney defendants in their roles as attorneys did not constitute state action in the absence of "some action that is fairly attributable to the state." Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999) (cleaned up).

6

F.2d 1364, 1377 (3d Cir. 1992) (en banc) (affirming a dismissal of a conspiracy claim under 42 U.S.C. § 1985 because of a failure "to assert any facts from which any type of conspiratorial agreement . . . can be inferred"). Because the § 1985 claim was insufficient, Cindy, LaDonna, and Ken could not prevail on their § 1986 claim, either. See Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980) (explaining that where a claim under §1985(3) is insufficient, a dependent § 1986 claim also fails).

Under the circumstances, the District Court did not abuse its discretion in concluding that further amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). And the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state law claims raised in the complaint after dismissing the claims under federal law. See Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 181 (3d Cir. 1999).

We have considered the other issues that Cindy, LaDonna, and Ken have raised in their brief and conclude that they are without merit.[8] For these reasons, we will affirm the District Court's judgment.

---

[8] Regarding their argument that the District Court should not have permitted Kermit, Raymond, Fernandez, and Spurlin to file their answer to the complaint in December 2023, we have reviewed the docket and do not discern an abuse of discretion in permitting them to then file the answer. See In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) (explaining that "matters of docket control … are committed to the sound discretion of the district court").