# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Terry R. Brumfield, Jr.,**
**Defendant Below, Petitioner**

**vs)  No. 18-0109** (Logan County 13-C-168P)

**Jennings Mark Workman, Jr.,**
**Plaintiff Below, Respondent**

**FILED**

**March 26, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

In 2013, Respondent Jennings Mark Workman, Jr. brought this civil rights action, under 42 United States Code § 1983, against Petitioner Terry R. Brumfield, Jr., Deputy Sheriff of Logan County, West Virginia, and others. Mr. Workman alleged his rights secured by the Fourth and Fourteenth Amendments of the United States Constitution were violated when he was wrongfully removed from his residence and forced to leave under the threat of arrest. The jury found in favor of Mr. Workman, awarded $4,862 for lost personal property and $5,000 for annoyance and inconvenience, and assessed all damages against Deputy Brumfield.

Deputy Brumfield appeals the orders of the Circuit Court of Logan County that denied his post-trial motions for judgment as a matter of law and for a new trial. W.Va. R. Civ. Pro 50(b) & 59. He contends the circuit court should have dismissed the claims against him on the basis of qualified immunity. Deputy Brumfield also appeals the order awarding $201,913 in attorney's fees to Mr. Workman's trial counsel. *See* 42 U.S.C. § 1988. He contends the circuit court erred by not affording him an on-the-record examination of the fee petition. Mr. Workman raises several cross-assignments of error including his argument that the circuit court erred by not instructing the jury on punitive damages and denying his Rule 59 motion for a new trial on the issue of punitive damages.

This Court has considered the parties' briefs, their oral arguments, and the record on appeal.[1] Upon review, the Court discerns no substantial question of law. Consequently, a memorandum decision is the appropriate disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure. As explained below, we affirm the orders of the circuit court denying the parties' post-trial motions, vacate the order awarding attorney's fees, and remand for proceedings consistent with this decision.

---

[1] Deputy Brumfield is represented by attorneys William E. Murray, Leah P. Macia, and Alan J. Nichols. Mr. Workman is represented by attorneys George L. Partain and Erica Barker Cook.

1

# I. Factual Background

The civil rights action from which this appeal arises concerns the unlawful eviction of Mr. Workman from his residence.[2] Mr. Workman received an interest in this property—Lot No. 53 in the Taplin Subdivision with a doublewide trailer—after his father passed away intestate in 2004. Mr. Workman received a 12.5% interest in this property, as did each of his three siblings. Mr. Workman's mother received 50% interest in this property that she later conveyed to defendant below, Frank M. Dillon.

On September 9, 2011, Mr. Workman moved into the home. That same day, Mr. Workman obtained a title report from attorney George L. Partain (the "Partain letter") showing that he was a co-owner of the property and that all owners had "equal access and right to be on the property at all times." Mr. Workman signed up for utility services and made repairs to the home.

On February 14, 2013, Mr. Dillon went to the home along with defendant below Kellie Curry (Mr. Dillon's ex-girlfriend) and defendant below Christopher Codispoti (Ms. Curry's then-boyfriend). Mr. Dillon told Mr. Workman that he (Mr. Dillon) had a deed to the property, and that Mr. Workman had to move out so that Ms. Curry and Mr. Codispoti could move in. Mr. Workman responded by calling the police. West Virginia State Trooper Roger Glaspell, who responded to the call, reviewed the Partain letter and the utility bills in Mr. Workman's name. Trooper Glaspell also reviewed Mr. Dillon's "deed." Trooper Glaspell concluded that the matter was civil in nature and needed to go through the court system.

The underlying lawsuit concerns the events that took place the following day, February 15, 2013. Frank M. Dillon and his father (also named Frank Dillon, hereinafter "Mr. Dillon's father") asked Magistrate Leonard Codispoti for a criminal warrant of trespass for an *unknown trespasser* on the property. Magistrate Codispoti refused, and told the Dillons to go to the sheriff's office for an "intake," and to let the sheriff seek a warrant. Mr. Dillon and his father went to the sheriff's office where Mr. Dillon apparently drafted and signed a statement regarding Mr. Workman and the property. Mr. Dillon's father later testified that Logan County Sheriff Sonya Porter told deputies to "[g]o get him out" or "[p]ut him out."

At about 4:00 p.m. on February 15, 2013, Deputy Brumfield and defendant below Logan County Sheriff Deputy Joseph Lyall went to the property and told Mr. Workman that they had an order to remove him. Mr. Workman responded that he was part owner and gave the deputies the Partain letter, which both appeared to read. Deputy Brumfield stated that the letter was "not worth the paper it was written on" and that Mr. Workman had twenty minutes to gather what he could and get off the property. When Mr. Workman protested, the deputies started to arrest him. Mr. Dillon told the deputies he did not want Mr. Workman arrested, but just wanted him off the property. Deputy Brumfield told Mr. Workman that (1) Mr. Workman would have to go to magistrate court to sort the matter out, and (2) Mr. Workman would be arrested if he came back

---

[2] We view the facts in the light most favorable to Mr. Workman, who prevailed at the jury trial. *Payne v. Jones*, 711 F.3d 85, 87-88 (2d Cir. 2013) (construing facts most favorable to plaintiff who prevailed in 42 U.S.C. § 1983 action against police officer).

to the property. Mr. Workman left on foot with the possessions he could carry. Ms. Curry and Mr. Codispoti moved into the residence later that evening.

Mr. Workman learned that there was no court order for his eviction. Mr. Workman lost personal belongings including furniture and was homeless for more than two years. He slept on friends' couches, in his truck, or outdoors.

## II. Procedural Background

Mr. Workman filed this action against Deputies Brumfield and Lyall, and Sheriff Porter, for violating his rights secured by the Fourth and Fourteenth Amendments of the United States Constitution and requested damages and attorney's fees. 42 U.S.C. §§ 1983 and 1988. Mr. Workman alleged Mr. Dillon, Ms. Curry, and Mr. Codispoti acted in concert with the deputies.[3]

The four-day jury trial in this matter commenced in October 2017. Deputy Brumfield moved for judgment as a matter of law and maintained his defense of qualified immunity. The circuit court rejected his motion. The jury found only one defendant, Deputy Brumfield, liable and assessed $4,862 in special damages for lost personal property and $5,000 for annoyance and inconvenience. On October 18, 2017, the court entered judgment against Deputy Brumfield for $9,862.

Post-trial, Deputy Brumfield filed a Rule 50 motion for a judgment as a matter of law and a Rule 59 motion for a new trial. Mr. Workman also filed a Rule 50 motion for judgment as a matter of law against Deputy Lyall, a Rule 59 motion for a new trial on punitive damages, and a motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988 on behalf of George L. Partain and two other lawyers who worked on the case.

Following a November 2017 hearing on the post-trial motions, the circuit court denied Mr. Workman's Rule 59 and Rule 50 motions. It also denied Deputy Brumfield's Rule 50 and Rule 59 motions. The circuit court granted Mr. Partain's motion for $201,913 in attorney's fees and $5,323 in costs. This appeal followed.

## III. Standard of Review

Between them, the parties raise fifteen assignments and cross-assignments of error. For purposes of clarity, we consolidate those that are related. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 401-02, 729 S.E.2d 231, 236-37 (2012) (consolidating related and/or redundant assignments of error).[4]

---

[3] Ultimately, the circuit court granted default judgments against Ms. Curry, Mr. Codispoti, and Mr. Dillon. We note that Mr. Dillon passed away prior to trial and his father testified at trial.

[4] The parties take issue with several jury instructions. Collectively, these arguments merit little discussion and we dispose of them at the onset. Deputy Brumfield contends that the circuit court committed error when giving several instructions on the issues of qualified immunity and

Deputy Brumfield appeals the circuit court's orders denying his post-trial motions. Rule 50(b) of the West Virginia Rules of Civil Procedure allows a defendant to move for a judgment notwithstanding the verdict if, with respect to an issue essential to a plaintiff's case, there exists no legally sufficient evidentiary basis for the jury to find in favor of the plaintiff. In syllabus point one of *Mildred L.M. v. John O.F.,* 192 W.Va. 345, 452 S.E.2d 436 (1994), this Court held:

> In reviewing a trial court's ruling on a motion for a judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a motion for a judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of this Court to reverse the circuit court and to order judgment for the appellant.

Moreover,

> [t]his Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

the Fourth Amendment seizure analysis (Mr. Workman's Instructions 1, 2, 5, 9 and 11). He also complains about the spoliation of evidence instruction (Mr. Workman's Instruction 8) related to the failure of the Sheriff's office to produce the three-page complaint Mr. Dillon completed when he sought to have Mr. Workman removed from the property. In a cross-assignment of error, Mr. Workman complains that the circuit court erred in refusing his instruction related to his contention that because Mr. Dillon placed title to the doublewide trailer in his name *after* this action was filed, he was not vested with complete ownership interest in the home.

This Court has held that

> [t]he formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

*Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 116, 459 S.E.2d 374, 393 (1995). The jury instructions given here, viewed as a whole, were adequate to ensure that the jury was informed as to its responsibilities and as to the substantive law standards in this case. Thus, we are unconvinced that any technical errors in the instructions warrant a new trial.

Syl. Pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice,* 230 W. Va. 105, 736 S.E.2d 338 (2012), *superseded by statute on other grounds as recognized in Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017).

Deputy Brumfield raises eight assignments of error. We discern that several specific items constitute the crux of his appeal, namely, that he is entitled to qualified immunity.

Deputy Brumfield also appeals the circuit court's order awarding Mr. Workman attorney's fees. When reviewing an attorney's fee petition in a civil rights action, the circuit court must apply the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds in Blanchard v. Bergeron*, 489 U.S. 87 (1989), when evaluating the reasonableness of the award. *Brown v. Thompson*, 192 W. Va. 412, 413-14, 452 S.E.2d 728, 729-30 (1994). As the *Johnson* court made clear, "[t]he reasonableness of the award [of attorney's fees] is to be judged by the abuse of discretion standard of review." 488 F.2d at 717.

Mr. Workman raises seven cross-assignments of error including his arguments that the circuit court erred by not instructing the jury on punitive damages and denying his Rule 59 motion for a new trial on that issue. "This Court has consistently held the determination of whether a punitive damages jury instruction is appropriate is within the sound discretion of the trial judge." *JWCF, LP v. Farruggia*, 232 W. Va. 417, 428, 752 S.E.2d 571, 582 (2013).

## IV. Discussion

42 United States Code Section 1983 provides a federal cause of action for alleged violations of federally secured statutory or constitutional rights "under color of state law." 42 U.S.C. § 1983. *See West v. Adkins*, 487 U.S. 42, 48 (1988). When analyzing a § 1983 claim, this Court's initial inquiry must focus on two essential elements: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled in part on other grounds in Daniels v. Williams*, 474 U.S. 327 (1986). "[F]ederal law is controlling when public officials are sued in state court for violations of federal rights under 42 U.S.C. § 1983." *Robinson v. Pack*, 223 W. Va. 828, 834, 769 S.E.2d 660, 666 (2009).

Here, there can be little doubt—and the parties do not dispute—that Deputy Brumfield's actions were taken under color of state law. Indeed, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Therefore, the Court need only consider the second requirement of § 1983—whether a constitutional violation has been asserted. Here, Mr. Workman asserted a violation of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution. We discuss them below when addressing Deputy Brumfield's claim of qualified immunity.

5

## A. Qualified Immunity

The doctrine of qualified immunity properly applied, "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted). "To overcome qualified immunity, a plaintiff must plead facts 'showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168-69 (3d Cir. 2016), *cert. denied*, 137 S.Ct. 161 (2016) (quoting *al-Kidd*, 563 U.S. at 735). And an official's conduct violates clearly established law if "there [is] sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that . . . her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). Such precedent must come either from the United States Supreme Court or a "'robust consensus of cases of persuasive authority' in the Court of Appeals." *Mammaro*, 814 F.3d at 169 (quoting *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (per curiam)).

Arguing disputed facts on appeal, Deputy Brumfield denies evicting Mr. Workman.[5] Deputy Brumfield contends that he acted as a reasonable officer would and violated no clearly established Fourth Amendment right when he was sent to deal with an alleged trespasser and then suddenly had to determine how to resolve the conflict when he learned that Mr. Workman might have some property rights that conflicted with Mr. Dillon's complaint. We disagree. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It is well-settled that the protection of individuals from unreasonable government intrusion into their houses remains at the very core of the Fourth Amendment. *Sandoval v. L.A. Metro. Police Dep't*, 756 F.3d 1154 (9th Cir. 2014). Moreover, controlling federal precedent clearly establishes that a police officer violates an individual's Fourth Amendment rights by entering his or her home without a warrant, a court order, or other justification, such as an exigent circumstance. *See Katz v. United States,* 389 U.S. 347, 357 ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment."). Thus, it is clear that Deputy Brumfield violated Mr. Workman's constitutional rights when he entered his residence and ordered Mr. Workman to leave—under the threat of arrest—without a court order.

---

[5] Deputy Brumfield's trial testimony differed from his pre-trial admissions. During discovery, Mr. Workman requested the following admissions from Deputy Brumfield: (1) that Sheriff Porter directed Deputy Brumfield to go with Mr. Dillon to evict Mr. Workman from the home; and (2) that Deputy Brumfield ordered Mr. Workman out of the trailer. Deputy Brumfield admitted both points prior to trial. At trial, however, Deputy Brumfield testified that he evicted no one that day. As a cross-assignment of error, Mr. Workman contends the circuit court erred in overruling his objections to Deputy Brumfield's testimony that was contrary to his Rule 36 admission response. *See* W.Va. R. Civ. P. 36. Other than the fact he takes exception to the circuit court's ruling, this Court does not comprehend why Mr. Workman would raise this on appeal considering the jury found in his favor and assessed all damages against Deputy Brumfield.

Deputy Brumfield also contends that he violated no clearly established Fourteenth Amendment right because Mr. Workman still had post-deprivation remedies available such as a declaratory judgment action to establish ownership of the home. We disagree. It is well-established that possessory interests in property invoke procedural due process protections. *See Fuentes v. Shevin,* 407 U.S. 67, 87 (1972). And at the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard. *See LaChance v. Erickson,* 522 U.S. 262 (1998).[6] It is clear that Mr. Workman's possessory interest in the trailer he had lived in for two years invoked the protection of the Due Process Clause.

This case is analogous to *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998). In *Abbott*, a woman enlisted the help of a police officer to seize a vehicle from her ex-husband. *Id*. at 144. The ex-husband had completely paid off the loan on the vehicle but chose not to transfer the title to his own name because by doing so he would have forfeited the nontransferrable warranty. When confronted by the police officer, the ex-husband explained that he had paid for the vehicle, had driven it for seven years, and had a bill of sale at home establishing that he owned it. The officer still threatened to arrest him if he drove off in his ex-wife's vehicle. *Id*. The court in *Abbott* found that the ex-husband had "a strong claim" against the police officer "for violating his right to procedural due process by failing to give him advance notice and an opportunity to be heard prior to [the ex-wife's] seizure of the van." *Id*. at 147.

Based on the foregoing, we conclude that the circuit court did not err by failing to dismiss claims against Deputy Brumfield on the basis of qualified immunity and denying his post-trial motions on that issue. "At the heart of *Fuentes* is the principle that it is not for law enforcement officers to decide who is entitled to possession of property. Rather, it is the domain of the courts, and citizens are to have a meaningful opportunity to be heard as to their rights before they are finally deprived of possession of property." *Abbott*, 164 F.3d at 149. After arriving on the premises, Deputy Brumfield knew that Mr. Workman was living in the trailer and professed to have legal rights to the property. In his single-minded reliance on Mr. Dillon's untruthful complaint, Deputy Brumfield rode roughshod over *Fuentes*. Moreover, he ignored the broader context of the seizure which militated against the legality and reasonableness of his hasty conclusion that Mr. Dillon, not Mr. Workman, was entitled to immediate possession of the home. An official familiar with the facts then known and the law then applicable would have reasonably believed that his conduct was violating clearly established law. Sheriff Porter testified that the deputies knew or should know that a person's property cannot be seized by a law

---

[6] Prior notice is not, however, absolutely necessary so long as other procedures guarantee protection against erroneous or arbitrary seizures. *See Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 605-06 (1974). The United States Supreme Court has found prior notice unnecessary in rare cases where (1) a seizure was directly necessary to secure an important governmental or general public interest, (2) there was a special need for very prompt action, and (3) "the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in a particular instance." *Fuentes,* 407 U.S. at 91. This rare exception is inapplicable here.

enforcement official unless there is a notice and an opportunity to be heard by a neutral magistrate before that action is taken.

Mr. Workman's clear possessory interest in the home is what distinguishes this case from *District of Columbia v. Wesby*, 138 S.Ct. 577 (2018). In *Wesby*, the United States Supreme Court found police officers were entitled to qualified immunity from § 1983 false arrest claims when they responded to a complaint of a raucous late-night house party and arrested twenty-one partygoers for unlawful entry. In *Wesby*, "the officers made an 'entirely reasonable inference' that the partygoers" had no possessory rights to the home but "were knowingly taking advantage of a vacant house as a venue for their late-night party." 138 S.Ct. at 586 (citing *Maryland v. Pringle*, 540 U.S. 366, 372 (2003). Likewise, *Higgins v. Penobscot County Sheriff's Department*, 446 F.3d 11 (1st Cir. 2006), is factually distinguishable. In *Higgin*s, a deputy was summoned to mediate a volatile dispute involving an alleged trespasser of a garage apartment that had been vacant for sometime. *Id*. at 15. The deputy ordered the alleged trespasser from the scene to diffuse the situation. When holding the deputy was entitled to qualified immunity, the court noted that the officer's actions were reasonable "[g]iven the paucity of evidence that Higgins was entitled to occupy the property and the abundance of evidence pointing the other way[.]" *Id*. In this case, Deputy Brumfield was not called to a scene where a volatile dispute was in progress between competing property owners. Rather, the dispute arose between Mr. Workman *and the deputies* when they ordered him to leave the home he had lived in for nearly two years and abandon his possessions.[7]

**B. Attorney's Fees**

42 United States Code § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." As the United States Supreme Court has emphasized, "Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights. But unjustified enhancements that serve only to enrich attorneys are not consistent with the statute's aim." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010). Fee disputes hinge upon "the 'lodestar' formula," which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

Deputy Brumfield contends the trial court erred in finding the hours expended by Mr. Workman's trial counsel on the litigation to be reasonable without allowing an appropriate, on-

---

[7] In light of our resolution of Deputy Brumfield's qualified immunity claims, we reject his contentions that (1) the circuit court committed cumulative error with regard to its analysis of the issue, and (2) interrogatories should have been included on the verdict form regarding what specific constitutional rights had been violated. As a general rule, a circuit court has considerable discretion in determining whether to give special verdicts and interrogatories to a jury unless it is mandated to do so by statute. *See* Syl. Pt. 15, *Carper v. Kanawha Banking & Trust Co.,* 157 W. Va. 477, 207 S.E.2d 897 (1974) ("In absence of statutory requirement, whether a jury shall be compelled to answer special interrogatories before arriving at a general verdict, is a matter resting in the sound discretion of the trial court.").

the-record, examination of the fee petition. We agree and reject Mr. Workman's contention that Deputy Brumfield affirmatively waived his request. It has long been established that the determination of whether attorney's fees are reasonable is simply a fact-driven question that must be assessed. *See Johnson,* 488 F.2d 714. In order for a circuit court to determine those facts, it must allow the parties to present evidence on their own behalf and to test their opponents' evidence by cross-examination. *See also Multiplex, Inc. v. Town of Clay*, 231 W. Va. 728, 738, 749 S.E.2d 621, 631 (2013); *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.,* 210 W. Va. 223, 229, 557 S.E.2d 277, 283 (2001) ("We have previously determined, on numerous occasions, that a circuit court has erred by failing to afford a party notice and the opportunity to be heard prior to awarding attorney's fees."). Accordingly, we vacate the order awarding attorney's fees and costs and remand this case for a hearing on attorney's fees, after which the circuit court shall make findings of fact and conclusions of law sufficient to allow meaningful appellate review in the event either party elects to file an appeal.

## C. Punitive Damages

The principal argument in Mr. Workman's cross-assignments of error is his contention that he is entitled to punitive damages.[8] He asserts that the circuit court erred in refusing to instruct the jury on his claim for punitive damages and erred in denying his Rule 59 motion for a new trial on that issue. The United States Supreme Court has held "that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983). "Such indifference

---

[8] Mr. Workman raises cross-assignments of error regarding defendants below who are not parties to this appeal. Mr. Workman argues that the circuit court erred in denying (1) his motion to rule that Deputy Lyall had admitted the allegations in the amended complaint when he failed to file an answer, and (2) his Rule 59 motion for judgment against Deputy Lyall. These arguments are unpersuasive for two reasons. First, the circuit court declined to grant default judgment against Deputy Lyall. And second, Mr. Workman acknowledges that holding Deputy Lyall liable for his "non-actions" would add nothing to the damages awarded.

Mr. Workman also contends the circuit court erred in its amended judgment order by noting he received nothing from the Estate of Frank M. Dillon, considering default judgment was entered against the Estate. *See infra* note 3. Mr. Workman states that no party made argument at trial regarding whether a verdict should be returned against the Estate. This argument lacks merit considering the Estate of Frank M. Dillon *was* placed on the verdict form and the jury assessed no damages against it.

Deputy Brumfield also raises an assignment of error regarding defendants below who are not parties to this appeal. He complains that the circuit court denied his request to include Ms. Curry and Mr. Codispoti on the general verdict form. We decline to address this issue because the parties did not adequately brief it. "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).

'pertains to the defendant's knowledge that he may be acting in violation of federal law.'" *DiMarco-Zappa v. Cabanillas,* 238 F.3d 25, 37 (1st Cir. 2001) (quoting *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 535 (1999)). The "guiding inquiry" is whether the defendant "acted in the face of a perceived risk that his actions will violate federal law," although "egregious or outrageous acts" may also support an inference of the requisite evil motive. *Kolstad,* 527 U.S. at 538.

Upon our review, we find no abuse of discretion by the circuit court in declining to give a punitive damages instruction to the jury or denying a new trial on that issue. While Deputy Brumfield's actions were legally improper and harmful to Mr. Workman, there is scant evidence to support a finding that Deputy Brumfield was motivated by evil motive or intent.

### IV. Conclusion

For the reasons set forth above, we affirm the following orders of the Circuit Court of Logan County: (1) the December 20, 2017, order denying Mr. Workman's Rule 59 motion; (2) the December 26, 2017, order denying Mr. Workman's Rule 50 motion; and (3) the January 11, 2018, order denying Deputy Brumfield's Rule 59 and 59 motions. We vacate the January 16, 2018, order awarding attorney's fees and costs, and remand the case for further proceedings consistent with this decision.

Affirmed in part, vacated
in part, and remanded.

**ISSUED:** March 26, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Justice Evan H. Jenkins

JENKINS, J., dissenting and writing separately:

The majority's opinion in this case finds that Deputy Brumfield was not entitled to statutory immunity because he violated Mr. Workman's clearly established rights. However, I do not agree with the majority's assessment of the facts or its application of the law in this matter, and for the following reasons, I respectfully dissent.

The crux of this case comes down to the single question of *what would a reasonable officer do under the same set of circumstances.* The majority relies on disputed facts to support

its argument that Deputy Brumfield violated Mr. Workman's constitutional rights under the Fourth and Fourteenth Amendments when he arrived at the property.

Here are the disputed facts glossed-over by the majority opinion. Deputy Brumfield was dispatched to the property by his superior, Sheriff Sonya Porter, who ordered him and Deputy Lyall to "Go get him out" or "Put him out." Pursuant to these orders, Deputy Brumfield arrived at the residence where it was clear there was a dispute between the two parties: Mr. Workman held a letter from an attorney alleging he had a right to be on the property, and Mr. Dillon claimed that he had the rights to the property per his deed. Because of this dispute, Deputy Brumfield ordered both parties to vacate the premises and instructed them to sort out their dispute in court.

In my view, the viability of the claims against Deputy Brumfield hinge on an analysis of whether Deputy Brumfield's actions at the property violated a clearly established right, and whether a reasonable officer would have acted the same under the same set of circumstances. After a review of the disputed facts, one cannot reasonably find in Mr. Workman's favor. From the facts presented above, it is evident that upon his arrival at the property, Deputy Brumfield walked into a heated property dispute between Mr. Workman and Mr. Dillon. In other words, it was not clear who legally had the rights to the property.

The majority concludes that Deputy Brumfield's actions violated the clearly established rights of Mr. Workman, and were unreasonable. The majority goes on to characterize Deputy Brumfield's actions as "single-minded reliance" where he "rode roughshod over *Fuentes*" and "ignored the broader context of the seizure which militated against the legality and reasonableness of his hasty conclusion." This is simply wrong. Here, the facts ignored by the majority show that Deputy Brumfield identified a property dispute, and properly suggested that the parties resolve their issues in court. Moreover, the majority misconstrues the facts in its analysis of reasonableness. In an attempt to distinguish the facts from the scenario in *Higgins v. Penobscot County Sheriff's Department*, 446 F.3d 11 (1st Cir. 2006), the majority concludes that Deputy Brumfield was not called to a scene with a dispute between property owners, but rather a dispute between Mr. Workman and the deputies. However, this reading of the facts is misleading, and I disagree with the majority's adoption of such findings. The record reflects that Deputy Workman ordered *both* parties off the property and recommended that *both* parties settle their differences in court. The United States Supreme Court has held that "[c]learly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *D.C. v. Wesby*, 138 S.Ct. 577 (2018) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011)) (internal quotations omitted). Any reasonable officer would know that an unreasonable search without a warrant is a violation of an individual's rights; however, it was not clearly established when Deputy Brumfield arrived on the property, *who* had the rights to the property. As such, contrary to the findings reached by the majority, it is my opinion that an officer acting in Deputy Brumfield's situation would have reasonably believed that he was not violating clearly established law.

Therefore, I strongly disagree with the majority's finding that Deputy Brumfield was not entitled to statutory immunity. For these reasons, I respectfully dissent.

11